UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

MAY 3 1 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-337-GWU

PAUL E. LUCAS,                                    PLAINTIFF,

VS:                    MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                 DEFENDANT,

INTRODUCTION

Paul Lucas brought this action to obtain judicial review of an unfavorable administrative decision on his application for Supplemental Security Income. The case is before the Court on cross-motions for summary judgment.

APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

1.      Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.      Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.      Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).
5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes,

1

the claimant is disabled.   If no, proceed to Step 6.   <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled.   If no, proceed to step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?   If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(l).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply.     Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. <u>Id</u>. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Id</u>.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings. <u>Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir.  1984); <u>King v. Heckler</u>, 742

2

F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1521, 416.921. The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment," Landsaw v. Secretary of Health and Human Services, 803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that she or he is unable to return to this work. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways that the Commissioner may meet his burden is through the use of the medical-vocational guidelines.

3

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b), 416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the lack of bilateral manual dexterity compromise a person's ability to do a full range

4

of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Lucas, a 37 year-old former patient aide, insurance agent, and meat cutter with a high school education, suffered from impairments related to an anxiety disorder and a personality disorder. (Tr. 14, 16). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of work at all exertional levels. (Tr. 20). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 21). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 19-20).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert James Miller included such non-exertional restrictions as a limitation to work settings that

5

would involve no more than low to medium levels of stress and a limitation to simple, routine tasks performed in an non-public setting. (Tr. 310-311). In response, the witness identified a significant number of jobs which could still be performed. (Tr. 311). Therefore, assuming that the vocational factors considered by Miller fairly depicted Lucas' condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The hypothetical question fairly characterized Lucas' condition, as required by Varley. No treating or examining physician imposed any physical limitations. Therefore, the ALJ 's finding that the plaintiff did not suffer from any exertional restrictions was appropriate.

The mental factors presented to Miller were compatible with the opinion of Psychologist Gary Maryman, the only mental health professional of record to actually examine Lucas. Maryman indicated that the claimant should avoid public contact and more than a medium level of stress but would be able to perform simple, repetitive tasks. (Tr. 238-239). This report supports the administrative decision.

Dr. Randy Oaks, Lucas' family physician, who treated him largely for anxiety, did indicate in February of 2004 that the plaintiff was "....unable to work at this time." (Tr. 279). This statement is somewhat vague and it is unclear whether a permanent or temporary restriction was intended. Dr. Oaks' treatment records do not support the existence of a totally disabling mental condition. The claimant's mental problems were generally described as situational and responded well to medication. (Tr. 226-230, 279-281). In October of 2003, Lucas's speech was fluent and his thought processes were described as clear. (Tr. 280). Dr. Oaks offered to refer the plaintiff to a mental health specialist but

6

the claimant declined, allegedly due to cost.[1] (Tr. 296). Unlike Maryman, Dr. Oaks was not a mental health professional. The administrative regulations provide that: "We generally give more weight to the opinion of a specialist about medical issues related to his or her area of speciality that to the opinion of a source who is not a specialist." 20 C.F.R. Section 416.927(d)(5). Therefore, the ALJ properly rejected Dr. Oaks' opinion as binding in favor of that Maryman.

Psychologists Edward Stodola (Tr. 240-244) and Lea Perritt (Tr. 260-262), the non-examining medical reviewers, each a identified a "moderate" limitation of ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness which was not included in the hypothetical question. These opinions are outweighed by those of the Maryman to the extent their findings are contrary to those of he examining source.

Lucas asserts that the ALJ erred in failing to state the reasons why his testimony was not found to be credible. However, the ALJ cited a number of reasons including his testimony that Buspar and Xanax helped his psychological symptoms, his decision to decline a psychiatric referral for reasons of the expense when he did not even know how much it would cost, and his daily activities which included living on his own, doing laundry going to the store and watching television. (Tr. 15). Therefore, the Court must reject the plaintiff's argument.

Finally, Lucas argues that the ALJ erred in evaluating his past work. As previously noted, the ALJ found that the plaintiff could not return to his past work and based the denial decision upon his ability to perform other work. Therefore,

---

[1]Despite his alleged financial problems, the plaintiff maintained a heavy cigarette smoking habit despite medical advice to quit. (Tr. 229, 280). Upon questioning by the ALJ, the claimant admitted that he did not know the cost of the recommended mental health treatment. (Tr. 296).

7

the Court finds any error to be harmless.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the _____ 3/ _____ day of May, 2005.

G. WIX UNTHANK
SENIOR JUDGE

8